# Collins, &c. *vs* Carlisle's Heirs, &c.

## ERROR TO THE GRANT CIRCUIT.

### *Administrators. Sureties. Contribution.*

JUDGE BRECK delivered the opinion of the Court.

In 1836 the last will of A. H. Carlisle was duly proven and admitted to record in the Harrison Circuit Court, and administration, with the will annexed, no executors being named in it, was granted to his widow, Nancy Carlisle and John Mitchell, who, together with R. A. Collins and Levi Ashbrook as sureties, executed a joint administration bond. Subsequently the said Nancy departed this life, and administration upon her estate was granted to James W. Collins, the husband of one of the daughters of the testator.

This bill was filed by said James W. Collins and wife, and the other children of the testator, who being infants,

CHANCERY.<br><br>Case 5.<br><br>September 14.<br>Case stated.

COLLINS, &c.
*vs*
CARLISLE'S HRS.

sue by the said James as their guardian and next friend, against said Mitchell as the surviving administrator and the sureties in the administration bond.

The bill, besides the foregoing facts, alledges that the defendant, Mitchell, took upon himself mainly the administration of the estate of the testator; that no settlement was made by him and said Nancy before her death, nor since by him, of the administration. A settlement is sought and appropriate relief against Mitchell and the securities.

Decree of the
Circuit Court.

The Court below was of opinion that the funds of the estate received by Mitchell, after deducting credits, together with the interest, amounted to $3,675 68, and that he and the sureties were responsible therefor to the complainants, and decreed accordingly. To reverse that decree the defendants prosecute this writ of error.

The first question for consideration arises upon the construction of the following clause in the will of Carlisle:

Husband devises his estate after the payment of debts "wholly to his wife, and to be disposed of by her and divided among my children at her discretion." Held that the wife took an estate for life, with full power to give to the children, or appropriate it to their use at her discretion; and she dying, the children of the testator take that undisposed of by their mother under the will.

"As to my property and wealth, I first wish all my just debts and funeral expenses punctually paid, and the balance of my estate, wholly, I leave to my beloved wife, Nancy Carlisle, and to be disposed of by her and divided among my children at her discretion."

The Circuit Judge was of opinion that under this provision the widow was entitled to a life estate and to the extent that the estate had come to her hands and had been appropriated by her to the use of herself and children, that Mitchell and the sureties were not responsible.

In that opinion we concur. The testator manifestly intended his children to have the benefit of his estate, but as they appear to have been all infants and all females, he vested a discretionary power in the mother as to the time and mode of appropriating it for their benefit. So far as she acted under the authority thus given her by the will, her acts were final and conclusive. But as she died without controlling or disposing of the estate in the hands of Mitchell, the complainants, at her death, became entitled to it, not as contended, as her heirs, but under the will of their father.

If then the complainants, as legatees of their father, were entitled to the estate in the hands of Mitchell, the question arises as to the liability of the defendants, Collins and Ashbrook, as sureties in the administration bond. The condition of the bond is, that the estate is to be paid over to whoever may be entitled to it. But it is insisted that assets in the hands of one administrator or executor, are assets in the hands of both, and that each is responsible for the acts of the other. This position is undoubtedly true, where a joint bond has been executed as in this case, but the liability arises alone upon the bond; for at common law, one executor was not responsible for the acts of a co-executor in relation to property, over which he had exercised no control: *South's heirs* vs *Hoy's executors*, (3 *Monroe*, 95;) *Moore et al.* vs *Waller's heirs*, (1 *Marshatl*, 488.) But upon the bond each becomes responsible for the acts of the other, but the responsibility is as surety. The bond effects no change in the office or fiduciary character of the parties or in their relations to each other, except that each, in virtue thereof, occupies the attitude of surety for the other. Collins and Ashbrook were sureties for each administrator, and each a co-surety with them for the other. It results from this view of the case, that the widow, as co-surety with Collins and Ashbrook, was responsible to the complainants for the estate in the hands of Mitchell, and that it was erroneous to decree against them without reference to the liability of her estate or representatives.

The complainants being her personal and legal representatives, it was impracticable to include them in the decree against Mitchell and Collins, &c., but as all proper parties were before the Court, an enquiry should have been directed as to the estate left by her and belonging to her in her own right, and the result of such enquiry would enable the Court to determine the extent of the liability of the other sureties. If she left estate, to which the complainants would be entitled or had received, equal to one third of the decree against Mitchell, or of the estate in his hands, it would follow that Collins and Ashbrook should only be subjected to the payment of the other two thirds. If her estate should be inadequate to

*Margin notes:*

COLLINS, &c.
vs
CARLISLE'S HRS.

Administrators who give a joint bond, are liable jointly for the acts of each other upon the bond, their sureties are liable for each.

When two Administrators who give a joint bond, one dies, the other and sureties are sued in chancery for distribution by the heirs of the other Held that no decree should be given for comp'ts. for more than the sum for which the other sureties were liable, deducting the liability of the deceased Adm'r. as one surety, if he had estate to that amount

which had or would come to the hands of the complainants.

pay one third, they would be responsible for the residue, whatever it might be, after deducting her estate or such portion thereof, not exceeding one third, as would be subject, regarding her as a co-surety, to the complainant's demand. And for whatever sum upon these principles, they may be found responsible, a joint decree should be rendered against Mitchell and them, and Mitchell should be decreed to pay the residue.

It is certainly true that according to the strict rules of chancery practice, the complainants should have presented their case in view of the principles, which we recognize as applicable to it. But as no objection on this ground was made in the Court below, and as all proper parties are before the Court, we think it unnecessary to drive the party to a new suit or even to require additional pleadings. Complete justice in the whole case, we apprehend, may be done in the mode indicated.

We are not satisfied that there is any error in the decree in regard to the amount decreed against Mitchell. It is manifest that he appropriated the funds of the estate, which came into his hands, to his own use; and upon that ground he was properly charged with interest.

Nor have the defendants any cause to complain that a refunding bond had not been executed. The decree provides that no execution shall issue thereon, and that the same shall not bear interest until the next term of the Court, nor until a refunding bond shall be executed according to law, and with security to be approved of by the Court.

The decree is reversed and the cause remanded for further proceedingsa and decree consistent with the principles of this opinion.

*Trimble* for plaintiffs; *O'Harra* for defendants.